UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JERRY L. GATER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:18CV00038 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Jerry L. Gater, a person in federal custody. On October 15, 2015, Gater was found guilty of the offense of Possession with Intent to Distribute Cocaine Base and, on August 17, 2015, this Court sentenced Gater to the Bureau of Prisons for a term of 146 months, a sentence within the sentencing guideline range. Gater's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

## I. BACKGROUND

### A. THE INDICTMENT

Gater was indicted by a grand jury on April 16, 2015, and charged with possessing with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). (DCD 2)

### B. PROCEEDS PRO SE

Gater requested and was granted permission to proceed *pro se*. (DCD 25, 30)

### C. PRETRIALMOTIONS

Gater filed several pretrial motions, including a Motion Requesting Suppression of Evidence on June 17, 2015. (DCD 26) Gater also filed two supplemental motions relative to suppression. (DCD 33, 35) In his Motion to Suppress Evidence, Gater made several arguments to suppress the evidence seized pursuant to the search of his residence. One of those arguments was what Gater referred to as a "reverse Franks claim." He claimed that Officer Sullivan omitted information from his affidavit stating that he did not follow the procedures outlined in the Sikeston Department of Public Safety's policy on informants and that the second CS (Carter) is an abuser of various drugs, suffers from mental illness, and is a prostitute. (DCD 57, R&R, p. 22) Gater argued that, had this information been included in the affidavit, it would have lacked probable cause for the issuance of a search warrant. (DCD 26, p. 5)

After two hearings on the motions, a Report and Recommendation was issued by Magistrate Judge Abbie Crites-Leoni. Therein, Judge Crites-Leoni construed Gater's arguments as allegations of material omissions. (DCD 57, R&R, p. 22) The Court denied Gater's Motions, including his Motion to Suppress Evidence. (DCD 57, R&R) With respect to the need for a Franks hearing, Judge Crites-Leoni found:

> Gater argues that TFO Sullivan's affidavit had material omissions, because he did not provide information regarding the informants' character and background, and a related matter of whether the policy on use of informants was followed. If TFO Sullivan had articulated such information in his Affidavit, it would not have had a bearing on the probable cause determination for the following reason:

> Considering that "it is often people involved in criminal activities themselves that have the most knowledge about other criminal activities," it is no surprise that most confidential informants engaged in some sort of criminal activity. It would unduly hamper law enforcement if information from such persons were considered to be incredible simply because of their criminal status. Without more than a mere

allegation that the affiant failed to disclose the nature and degree of the confidential informant's criminal activity, [the defendant] was not entitled to a franks hearing.

(DCD 57, p. 23-24, quotation omitted). This Court issued an Order on September 23, 2015, sustaining and adopting Judge Crites-Leoni's Report and Recommendation. (DCD 61)

## D. JURY TRIAL

On October 14 and 15, 2015, the case against Gater was tried before a jury, which convicted him of possessing with intent to distribute cocaine base. (DCD 76-77)

## E. PRESENTENCE REPORT

The Presentence Report (PSR) provided that Gater was responsible for at least 122 grams of cocaine base. His resulting Base Offense Level was 26, pursuant to USSG § 2D1.1(c)(7), because the amount of cocaine base for which he was responsible, including relevant conduct, was more than 112 grams but less than 196 grams. (PSR ¶15) The PSR recommended a two-level enhancement for the specific offense characteristic of maintaining premises for the purpose of manufacturing or distributing a controlled substance pursuant to USSG § 2d1.1(b)(12). (PSR ¶16) The PSR also recommended a two-level enhancement for Obstruction of Justice pursuant to USSG § 3C1.1. (PSR ¶19)

The PSR recommended Gater's Total Offense Level to be 30. (PSR ¶23) Gater criminal history score was 12, which established a criminal history category of V. (PSR &42). Based on a total offense level of 30 and a criminal history category of V, Gater's guideline imprisonment range was 151 to 188 months. (PSR ¶72) Gater filed several objections to his presentence report. (Doc. 86)

**E. SENTENCING HEARING**

At the sentencing hearing, the Government provided testimony and additional proof regarding Gater's responsibility for 122 grams of cocaine base. The Government also conceded the two-level enhancement for maintaining premises for the purpose of manufacturing or distributing a controlled substance pursuant to USSG § 2d1.1(b)(12). (S. Tr. 52-53) Other than that concession, this Court adopted the factual findings of the Presentence Investigation Report (PSR), and determined that the total offense level was 28, and Gater's criminal history category was V. The resulting guideline range was 130 months to 162 months imprisonment, following by a supervised release period of six years. (S. Tr. 53-54) This Court imposed a sentence of 146 months of imprisonment, to be followed by a six-year term of supervised release. (S. Tr. 61)

**F. DIRECT APPEAL**

Gater appealed his conviction, based on this Court's denial of his motion to suppress evidence seized at his residence during the execution of a search warrant. Gater's conviction was affirmed by the Eighth Circuit on August 17, 2017. *United States v. Gater*, 868 F.3d 657 (8th Cir. 2017), cert. denied, 138 S. Ct. 751 (2018).

Gater argued on appeal that the district court erred "when it denied his request for a hearing on his claim that police officers secured a search warrant by omitting material information from the affidavit submitted to the issuing judge." *Id*. at 658. The Eighth Circuit concluded that Gater was not entitled to a hearing and affirmed. *Id*. at 660.

**G. MOTION FOR POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. § 2255.**

On February 16, 2018, Gater timely filed a Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, alleging four reasons why he was denied effective assistance of counsel.

1. In his first allegation, Gater alleges that his appellate counsel was ineffective because he "failed to argue on direct appeal that Movant had been denied his right to self-representation during voir dire proceedings." (2255 Mot. Memo p. i (9 of 38)). Gater is contesting his standby counsel, Jacob Zimmerman, not opposing venireperson McGee being struck for cause. *Id.*

2. In his second allegation, Gater alleges that his appellate counsel was ineffective for failing to argue on appeal that there was insufficient, reliable evidence to support this Court's finding that Gater was accountable for 122 grams of cocaine base. (2255 Mot. Memo p. v (13 of 38)).

3. In his third allegation, Gater alleges that this Court committed "procedural error in calculating drug amount attributable to movant." (2255 Mot. Memo p. x (18 of 38)).

4. In his fourth allegation, Gater alleges that his appellate counsel was ineffective in failing to "fully develop the claims although he had a mountain of information to do so" relative to his claim that he should have been "granted a Franks hearing because the affiant had omitted information from his affidavit that was relevant to the finding of probable cause." (2255 Mot. Memo p. xvi (24 of 38)).

5. For his fifth allegation, Gater asserts, in a Supplement, that his appellate counsel was ineffective in failing to contest on appeal the Government filing an Information pursuant to 21 U.S.C. § 851, and also using the convictions to increase his criminal history category to V, as "impermissible double counting." (2255 Mot. Memo Supp. (Doc. 3-1) p. 3 of 5).

## II. APPLICABLE LAW

### A. NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF.

28 U.S.C. § 2255 provides in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the Petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the Petitioner to be notified.

When a petition is brought under Section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. Section 2255 provides a remedy for jurisdictional and constitutional errors. A defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or laws of the United States, the court lacked jurisdiction to impose a sentence, the sentence exceeded the maximum authorized by law, or the sentence is otherwise subject to collateral attack. *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011), citing 28 U.S.C.A. § 2255(a).

In determining whether petitioner is entitled to an evidentiary hearing the court must consider "[a] petitioner's allegations … as true and a hearing should be held unless they are contradicted by the record, inherently incredible, merely conclusions, or would not entitle the petitioner to relief." *Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012), citing *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir.1995). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979), quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962). The court need not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)

"No hearing is required when the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007), quoting *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). *See also United States v. Robinson*, 64 F.3d 403, 405 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (2255 "petition can be dismissed without a hearing if . . . the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

**B. CLAIMS ALLEGING INEFFECTIVE ASSISTANCE OF COUNSEL.**

To prevail on a claim alleging ineffective assistance of counsel, the Petitioner must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under Strickland, the Petitioner must first show that the counsel's performance was deficient. *Id*. at 687. This requires the Petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Second, the Petitioner must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The Eighth Circuit has described the two-fold test as follows: (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different." *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993) (quotations omitted). The Eighth Circuit has also described the Strickland test as follows: "whether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

When evaluating counsel's performance, the "court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." *Strickland*, 466 U.S. at 689. Counsel's performance is considered

objectively, and gauged "whether it was reasonable 'under prevailing professional norms'

and "considering all the circumstances.'" *Fields*, 201 F.3d at 1027, quoting *Strickland*,

466 U.S. at 688. A reviewing court's "scrutiny of counsel's performance must be highly

deferential." *Strickland*, 466 U.S. at 689. "'When assessing attorney performance, courts

should avoid the distorting effects of hindsight and try to evaluate counsel's conduct by

looking at the circumstances as they must have appeared to counsel at the time.'" *Rodela-

Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010), quoting *United States v.

Staples*, 410 F.3d 484, 488 (8th Cir. 2005).

## III. DISCUSSION

### A. GATER'S APPELLATE COUNSEL WAS NOT INEFFECTIVE BY FAILING TO ARGUE ON APPEAL THAT GATER WAS DENIED HIS RIGHT OF SELF-REPRESENTATION BECAUSE HIS STANDBY TRIAL COUNSEL FAILED TO OPPOSE VENIREPERSON MCGEE (JUROR NUMBER 12) BEING STRUCK FOR CAUSE

For his argument for his first claim, Gater complains that his appellate counsel was

ineffective because he "failed to argue on direct appeal that Movant had been denied his

right to self-representation during voir dire proceedings." Gater is contesting his standby

counsel, Jacob Zimmerman, not opposing venireperson McGee being struck for cause. *Id*.

Relative to Gater's claim that Mr. Zimmerman as appellate counsel was

ineffective for failing to argue on direct appeal that Gater had been denied his right to

self-representation during voir dire proceedings appeal, review of claims that counsel was

ineffective for failing to advance a claim on appeal is deferential. "Our review is

particularly deferential when reviewing a claim that appellate counsel failed to raise an

additional issue on direct appeal." *Charboneau v. United States*, 702 F.3d 1132, 1136 (8th Cir. 2013).

> "The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal." *New v. United States*, 652 F.3d 949, 953 (8th Cir. 2011). Where, as here, "appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." This is because one of appellate counsel's functions is to winnow the available arguments and exercise judgment about which are most likely to succeed on appeal. *Gray v. Norman*, 739 F.3d 1113, 1117–18 (8th Cir. 2014) (alteration in original) (quoting *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006)).

*Walker v. United States*, 810 F.3d 568, 579–80 (8th Cir.), *cert. denied*, 136 S. Ct. 2042 (2016).

To prevail on this claim, Gater must show, under *Strickland*, that Mr. Zimmerman was deficient for failing to brief Gater's claim that he was denied his right of self-representation when Mr. Zimmerman failed to oppose the striking of venireperson McGee for cause, and that he was prejudiced by Mr. Zimmerman's failure to brief that claim on appeal. "The deficient performance standard is rigorous. 'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal.'" *United States v. Brown*, 528 F.3d 1030, 1032–33 (8th Cir. 2008), quoting *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308 (1983). Unless there is evidence to the contrary, "we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir.1998) (quotation omitted). "The prejudice standard is equally rigorous." *Brown*, 528 F.3d at 1033. Gater must establish that the outcome of his direct appeal would have been different—that the Eighth Circuit would have reversed his conviction on the basis that he

was denied his right to represent himself during jury selection. *See Becht v. United States*, 403 F.3d 541, 546 (8th Cir. 2005). Although Gater claims that his appellate counsel was ineffective, he does not show that even if such claim had been briefed on appeal, that the Eighth Circuit would have found in his favor. Gater cannot make that showing.

Gater assumes in his first point that he was entitled to have Mrs. McGee selected as a juror. Gater claims in his motion that venireperson McGee "is the ideal type of person i.e. honest that a defendant would seek to hear the evidence as Movant got a chance to vibe with the juror who emanated an aurora (sic) of wanting to ensure that her participation in the trial was secured with the desire to ensure fairness to everyone, the people and the defendant." (2255 Mot. Memo pp. iii-iv (11-12 of 38)).

While alleging that Mrs. McGee "firmly stated she could set that aside and be fair to both sides," Gater ignores the extraordinary basis for striking Mrs. McGee for cause developed during voir dire. Excerpts from the trial transcript during voir dire indicate that Mrs. McGee was unsuitable to be selected as a juror. To start, Mrs. McGee indicated that she had a scheduling conflict that would prevent her from attending the second day of trial. When the panel was asked by the Court as to whether any member had any conflicts for the two day trial, venireperson McGee responded that she had "something tomorrow." (T. Tr. 37) The discussion was as follows:

> THE COURT: The trial is expected to last just two days. So with that information do any of you have any serious or overriding personal situations or commitments at home or at work or otherwise that would prevent you from giving your undivided attention to the proceedings such as a child who's very ill or something of that sort?
> Yes, ma'am.

VENIREPERSON MCGEE: I have something tomorrow.

THE COURT: 12?

VENIREPERSON MCGEE: Yes, 12. And but tomorrow is the only obligation that I have.

THE COURT: Well, we will be in trial tomorrow. And is that something that you can reschedule or reset?

VENIREPERSON MCGEE: No, because my daughter has to have blood work every 30 days, and tomorrow is that day, and she has to be in Poplar Bluff.

THE COURT: All right. I'll make a note of that.
No one else could take care of that?

VENIREPERSON MCGEE: I could know by the end of the day before I leave here. Whenever daughter has to have blood work every 30 days, and tomorrow is that day, and she has to be in Poplar Bluff.

THE COURT: All right, we may do that then.
. . .

(T. Tr. 37-38)

      THE COURT: . . .
      Juror Number 12, I'll ask you if you would make that call just as soon as you can and then notify one of the court clerks so that they can relay the information back here.
      I've got quite a few people who may not end up serving on the jury, so if there's any way that you could work out some other arrangements with your daughter, was it?

VENIREPERSON MCGEE: Uh-huh.

THE COURT: The Court would be grateful.
. . .

(T. Tr. 70-71)

      Juror Number 12 indicated her conflict could not be rescheduled, but indicated she

would make a call to see if her daughter's blood work could be rescheduled. She was

struck for cause before it was determined whether her conflict relative to her daughter's blood work could be resolved.

Venireperson McGee later addressed the Court regarding her husband working with Gater.

VENIREPERSON MCGEE: To you, or would I say it to them? My husband –

THE COURT: Do you want to come up here.
(Proceedings were held at side bar, outside the hearing of the jury.)

VENIREPERSON MCGEE: My husband has worked with him, the defendant.

THE COURT: The defendant, Mr. Gater?

VENIREPERSON MCGEE: Yeah. My husband -- when I got here, the name sounded familiar, but when he said he was a contractor –

MR. HAHN: Your husband knows Mr. Gater?

VENIREPERSON MCGEE: Yes. He's worked with him. He's a contractor as well as my husband.

THE COURT: Has he worked with him on projects?

VENIREPERSON MCGEE: On projects.

THE COURT: Can you set that aside, or do you think that could cause you to have trouble being fair to both sides?

VENIREPERSON MCGEE: I believe I could be fair. It is completely a business relationship.

THE COURT: You're not close friends or anything like of that sort?

VENIREPERSON MCGEE: Yes.

THE COURT: Is he a close friend of Mr. Gater or just an acquaintance?

VENIREPERSON MCGEE: Business wise they have known each other for years. They've know each other for years.

THE COURT: Have they been in partnerships, or anything like that?

VENIREPERSON MCGEE: When there's something he can't do, he calls him. When there's something he can't do, he calls him. So that's kind of –

THE COURT: I don't want you to feel uncomfortable about serving. I want to make sure that you can be fair to both the Government and to Mr. Gater. So you think you can do that?

VENIREPERSON MCGEE: I could. I just didn't – I wanted to make sure.

THE COURT: Have you met with Mr. Gater?

VENIREPERSON MCGEE: Not formally. Just like hello, she is my wife, but nothing –

MR. HAHN: You'd know him when you see him?

VENIREPERSON MCGEE: I thought when I seen him, but whenever he started talking I thought maybe, and when he spoke, and he said he was a contractor it confirmed it.

MR. HAHN: Your husband has an ongoing relationship with Mr. Gater?

VENIREPERSON MCGEE: I think the last time they spoke they e-mailed about concrete maybe not too long ago. I don't know when it was.

MR. HAHN: My concern is this, this could put you in the position that if you think the evidence is sufficient to convict Mr. Gater but in the back of your mind your husband may ask how could you convict Jerry, and, you know, it could potentially be your husband's relationship with Mr. Gater as well.

VENIREPERSON MCGEE: That's kind of I wouldn't tell my husband that I'm doing it, but they know each other, but he could be, Hey, they know each other.

MR. HAHN: That's a tough position.

VENIREPERSON MCGEE: That's the only thing.

THE COURT: I think we're going to go ahead and excuse you from service because of that relationship between your husband and Mr. Gater.
Any objections?

MR. ZIMMERMAN: I think that's probably a good idea.

THE COURT: So we're going to strike Juror Number 12. So you'll have to report back down there to be excused.

(T. TR. 70-74)

Reviewing the strikes for cause, the Court referred to Juror Number 12, stating that "[t]he next one was Number 12, Keisha McGee, who was just excused because of her husband's contact and business relationship with the Defendant." (T. Tr. 75-76)

Venireperson McGee acknowledged that she would not tell her husband she was a juror in Gater's case, because of her husband's business relationship with Gater. She agreed with the prosecutor stating that serving as a juror would put her in a tough position. "That's the only thing." After Mrs. McGee acknowledged that serving as a juror would put her in a tough position, this Court excused her from service because of her husband's relationship with Mr. Gater.

Gater's counsel was not ineffective for failing to claim error on appeal for a claimed violation of his right to self-representation. This claim would not have been successful on appeal. Gater was not entitled to seat a juror whose husband had an ongoing relationship with Gater. McGee acknowledged serving as a juror would put her in a tough position. Even if McGee later determined that she did not have a scheduling conflict, the Court and the Government had ample reason to question McGee's objectivity and impartiality. Had the Court not struck Mrs. McGee for cause, the Government would have used one of its peremptory strikes to prevent the wife of Gater's business associate from serving on the jury.

On appeal the trial court's decision to disqualify prospective jurors for cause is reviewed for abuse of discretion. "The district court has substantial discretion in conducting voir dire, so most rulings on juror challenges are reviewed for abuse of discretion." *United States v. Blom*, 242 F.3d 799, 805 (8th Cir. 2001). The Eighth Circuit "will not interfere with the district court's broad discretion to strike jurors for cause absent a showing of actual prejudice." *United States v. Johnson*, 906 F.2d 1285, 1288 (8th Cir. 1990). Gater cannot show actual prejudice because his appellate counsel failed to brief an issue regarding a claimed violation of his right to self-representation.

Gater was not denied his right to represent himself during jury selection. Gater was present at, and very much engaged in, his trial. Gater could have objected if he wanted to claim Mrs. McGee should not have been struck for cause. Instead he sat silent. Gater was given an opportunity to object to the venirepersons being stricken for cause based on the court's own motion.

> THE COURT: Any objections to those being excused or stricken for cause on the Court's own motion.
>
> MR. HAHN: Not from the Government.
>
> THE COURT: Mr. Gater, do you get all this?
>
> MR. GATER: Yes.
>
> THE COURT: There's a lot of people that said they just can't serve. So any objection to taking those folks off then?
>
> MR. GATER: No, Your Honor.

(T. Tr. 77)

From the above exchange the Court made every effort to involve Mr. Gater in the jury selection process, including asking Gater if he had any objection to the venirepersons being excused or stricken for cause on the Court's own motion. Mr. Gater was given the opportunity to object, since he was representing himself. Gater, when invited to express his objections, stated that he had no objections. Accordingly, his false claim that he was denied his right of self-representation during jury selection is refuted by the record.

Even if Gater had expressed an objection, it would have been pointless. Mrs. McGee could not have been objective or impartial if selected as a juror. On direct appeal, under *Johnson*, Gater would have had an impossible burden in trying to show prejudice. On post-conviction review, Gater cannot meet either of his burdens under *Strickland*. Mr. Zimmerman was not ineffective for failing to pursue a frivolous claim on appeal. Nor can Gater show he was prejudiced in that Mrs. McGee was properly excused for cause by this Court. Gater has not shown, nor can he, that his counsel was deficient for failing to pursue such claim on appeal, or that he was prejudiced for such failure.

Gater's claim for ineffective assistance of appellate counsel as stated in his first claim is devoid of merit, is refuted by the record, and is denied.

## B. GATER'S APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO ARGUE ON APPEAL THERE WAS INSUFFICIENT, RELIABLE EVIDENCE TO SUPPORT THIS COURT'S FINDING THAT GATER WAS ACCOUNTABLE FOR 122 GRAMS OF COCAINE BASE

In his second allegation, Gater alleges that his appellate counsel was ineffective for failing to argue on appeal that there was insufficient, reliable evidence to support this Court's finding that Gater was accountable for 122 grams of cocaine base. (2255 Mot.

Memo p. v (13 of 38)). Gater's counsel was not ineffective for failing to argue on appeal a frivolous claim that there was insufficient evidence to support this Court's finding that Gater was accountable for at least 122 grams of cocaine base, as found in paragraphs 7 and 8 of the Presentence Report.

At trial, and at the sentencing hearing, the Government presented credible testimony that Gater was accountable for at least 122 grams of cocaine base. At trial the Government established that Gater possessed with the intent to distribute 9.44 grams of cocaine base. At the sentencing hearing, Officer Bobby Sullivan established that the $4600 in cash found in, and seized from, Gater's residence in Sikeston, Missouri, during the execution of the search warrant would represent at least 46 grams of crack cocaine if sold at $100 per gram, which was the street value of crack cocaine sold in user quantities of one gram. (S. Tr. 21)

In Officer Sullivan's opinion, the $4600 in cash seized from Gater's residence during the execution of the search warrant were the proceeds of Gater's drug transactions. The $4600.00 in cash was found in the same bag as the 9 grams of crack cocaine. Id. At the sentencing hearing, Officer Sullivan testified that Desweda Carter, who testified during the trial, told Officer Sullivan that she had seen Gater with several ounces of crack cocaine, possessed at different times and locations. Officer Sullivan related that Carter advised him that Gater possessed at least two ounces of crack cocaine at his residence prior to the execution of the search warrant on December 16, 2014. (S. Tr. 31) On two other occasions in 2014 Carter told Officer Sullivan that she saw Gater in possession of crack cocaine at his residence--an ounce on one occasion, and a half ounce on another

occasion. On another occasion Carter saw Gater possess around an ounce of crack cocaine in his truck on Osage Street. (S. Tr. 32) In addition Carter told Officer Sullivan that Gater sold crack cocaine at Carter's residence, and that he would meet his customers at her residence in Sikeston, Missouri. Gater had at least an ounce of crack cocaine at Carter's residence at one time. (S. Tr. 32-33)

Desweda Carter testified at the trial of this matter, and this Court found her testimony to be credible at trial. Carter testified that she saw Gater in the spring of 2014 distributing powder cocaine and crack cocaine. (T. Tr. 135) During 2014 Carter testified that Gater supplied her with crack cocaine about 20 times, at two-tenths of a gram. (T. Tr. 138-40) Carter also saw Gater dealing crack cocaine to other people in 2014, from his truck and also at the intersection of Dixie (or Osage) Street and North Street in Sikeston. (T . Tr. 141) Carter described observing Gater sell crack cocaine out of his residence the last nine months of 2014. (T. Tr. 143) Carter testified that during the latter eight or nine months of 2014 she saw Gater with several ounces of crack cocaine. (T. Tr. 145) Carter saw Gater sell crack cocaine from his truck at least ten times. (T. Tr. 147) There were times when Carter saw Gater with ounces of crack cocaine. (T. Tr. 148)

Carter's testimony at trial corroborated Officer Sullivan's testimony at the sentencing hearing regarding what Carter had related to him about Gater possessing and distributing crack cocaine.

> When the amount of drug seized by the government does not reflect the scale of the drug trafficking offense, as in this case, "the court shall approximate the quantity of the controlled substance" for sentencing purposes. U.S.S.G. § 2D1.1, comment. (n. 12). "The court may make a specific numeric determination of quantity based on imprecise evidence." United States v. Roach, 164 F.3d 403, 413

(8th Cir.1998). It "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

*United States v. Sicaros–Quintero*, 557 F.3d 579, 582 (8th Cir. 2009). There was substantial, credible evidence supporting this Court's finding that Gater was responsible for at least 122 grams of cocaine.

Gater is complaining that his counsel should have claimed on appeal that this Court's finding of drug quantity, 122 grams of cocaine, was in error. Gater is essentially taking "issue with the reliability of the government's witnesses in general and question [Carter's] credibility in particular, . . ." *United States v. Walker*, 688 F.3d 416, 422 (8th Cir. 2012). However, "[a]rguments about the reliability of a witness are in reality an attack on the credibility of that testimony, and witness credibility is an issue for the sentencing judge that is virtually unreviewable on appeal." *United States v. Sarabia–Martinez*, 276 F.3d 447, 450 (8th Cir. 2002).

Gater's second claim also fails *Strickland's* requirements of deficient performance on the part of his counsel, and resulting prejudice, in that Gater cannot show he would have been successful on appeal in attacking the drug quantity attributable to him under the sentencing guidelines. The Eighth Circuit would not have overturned this Court's factual determination relative to drug quantity. Gater has not shown any deficiency on the part of Mr. Zimmerman for failing to present on appeal this frivolous claim.

Gater's second claim of ineffective assistance of counsel fails both prongs of the *Strickland* standard. Gater cannot establish that his counsel was deficient, or that he was prejudiced, by his counsel's effective appellate advocacy on Gater's behalf. Accordingly, Gater's second claim for ineffective assistance of counsel is devoid of merit, is refuted by the record, and is denied.

## C. THIS COURT DID NOT COMMIT PROCEDURAL ERROR IN CALCULATING THE AMOUNT OF COCAINE BASE ATTRIBUTABLE TO GATER UNDER THE SENTENCING GUIDELINES

In his third allegation, Gater alleges that this Court committed "procedural error in calculating drug amount attributable to movant." (2255 Mot. Memo p. x (18 of 38)). Gater is predicating his claim by citing *Nelson v. Colorado*, 137 S.Ct. 1249 (2017) for the proposition that sentencing courts can no longer use relevant conduct in determining the amount of drugs attributable to an offender. Nelson held invalid a Colorado statute that required an acquitted defendant to "prove her innocence by clear and convincing evidence to obtain the refund of costs, fees, and restitution paid pursuant to an invalid conviction." *Id*. at 1255.

In addition to Gater's claim of this nature not being cognizable in a Section 2255 Petition, a logical extension of Nelson would not support Gater's argument. The holding of Nelson does not support, in the least, Gater's claim. Accordingly, Gater's third claim for is devoid of merit, is refuted by the record, and is denied.

## D. GATER'S APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO FULLY DEVELOP HIS CLAIM THAT HE SHOULD HAVE BEEN GRANTED A FRANKS HEARING

In his fourth allegation, Gater alleges that his appellate counsel was ineffective in failing "fully develop the claims although he had a mountain of information to do so" relative to his claim that he should have been "granted a Franks hearing because the affiant had omitted information from his affidavit that was relevant to the finding of probable cause." (2255 Mot. Memo p. xvi (24 of 38)).

Contrary to Gater's assertion that his appellate counsel was ineffective for failing to fully develop his claim for a *Franks* (*Franks v. Deleware*, 438 U.S. 154, 98 S.Ct. 2674 (1978)) hearing, the record is clear that Gater's claim for a *Franks* hearing was fully briefed and presented to the Eighth Circuit. Gater is complaining as to how his case was presented to the district court, acknowledging that "Counsel's deficiencies were not reasonable trial strategy." *Id*. Gater cannot complain about how his Franks claim was presented to this Court. He acted as his own attorney.

In addition, Gater cannot use this § 2255 proceeding to relitigate the sufficiency of the affidavit supporting the search warrant for his residence. This issue was previously decided by this Court, which was affirmed by the Eighth Circuit on appeal. "With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal." *Sun Bear*, 644 F.3d at 702, citing Davis v. United States, 417 U.S. 333, 346–47, 94 S.Ct. 2298 (1974).

As referenced by the Eighth Circuit, this Court "found 'no evidence to support that TFO Sullivan intended to omit facts to make the affidavit misleading, or that he did so in reckless disregard of making the affidavit misleading.' We see no error in this conclusion." *Gater*, 868 F.3d at 660. In reviewing the affidavit, the Eighth Circuit

considered Gater's claims that the source should have been considered unreliable because she was paid for her information and had a history of drug use. "Disclosing explicitly that the source had a history of drug use and that police paid the source for information would not have prevented the issuing judge from finding probable cause to search Gater's house." *Id*.

Gater's fourth claim, and third claim of ineffective assistance of appellate counsel, fails both prongs of the *Strickland* standard. Gater cannot establish that his counsel was deficient, or that he was prejudiced, by his counsel's effective appellate advocacy on Gater's behalf relative to his claim that he was entitled to a *Franks* hearing. This claim was litigated and briefed before this Court, and was denied. This Court's ruling denying his Franks claim was developed, briefed and presented to the Eighth Circuit Court of Appeals, which considered and rejected Gater's claim in a published opinion, and affirmed this Court's judgment.

Accordingly, Gater's fourth claim is devoid of merit, is refuted by the record, and is denied.

**E. GATER'S APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CONTEST ON APPEAL USE OF CONVICTIONS REFERENCED IN AN INFORMATION FILED PURSUANT TO 21 U.S.C. § 851 TO INCREASE HIS CRIMINAL HISTORY CATEGORY TO V**

For his fifth allegation, Gater asserts, in a Supplement, that his appellate counsel was ineffective in failing to contest on appeal the Government filing an Information pursuant to 21 U.S.C. § 851, and also using the convictions to increase his criminal

history category to V, as "impermissible double counting." (2255 Mot. Memo Supp. (Doc. 3-1) p. 3 of 5).

Gater's counsel was not ineffective for failing to argue on appeal a frivolous claim that there was impermissible double counting for his prior convictions being used to establish his criminal history category under the guidelines, and to enhance his term of supervised release under 21 U.S.C. §§ 841(b)(1)(C) and 851.

The Government filed an Information and Notice of Enhanced Sentence in Accordance with 21 U.S.C. § 851 identifying four of Gater's prior felony drug convictions that qualified him, in pertinent part, for an enhanced statutory maximum of 30 years, instead of 20 years, and a term of supervised release of six years instead of three years. (Doc. 69) Only the fourth conviction identified, for Trafficking in Drugs in the Second Degree in the Circuit Court of Jackson County, Missouri, in Case No.16CR00000917-01, counted for criminal history points for Gater. (PSR ¶ 38) Due to the age of the convictions, the first three convictions listed in the Government's 851 Notice did not count for criminal history points. (PSR ¶¶ 27, 32, 33) Inclusion of the Jackson County conviction for Trafficking in Drugs resulted in three criminal history points for Gater, resulting in a total of 12 criminal history points, instead of 9 criminal history points. Gater's criminal history category based on 12 criminal history points was V. It would have been a criminal history category of IV otherwise, based on 9 criminal history points, resulting in a guideline range of 110-137 months, instead of 130-162 months.

A similar claim of double counting was considered and rejected by the Eighth Circuit in *United States v. Quiroga*, 554 F.3d 1150, 1158 (8th Cir. 2009). "[T]there is no double enhancement where the sentencing guidelines merely establish a range of punishment within the range of penalties authorized by statute. *United States v. Moralez*, 964 F.2d 677, 682–83 (7th Cir. 1992); *United States v. Amis*, 926 F.2d 328, 330 (3d Cir. 1991); *United States v. Sanchez–Lopez*, 879 F.2d 541, 559 (9th Cir. 1989)."

The Seventh Circuit in *Moralez* stated:

> Multiple penalties for a single criminal transaction are not necessarily impermissible where Congress manifests its intent that enhancement of penalties is proper. *United States v. Blocker*, 802 F.2d 1102, 1105 (9th Cir.1986). In the instant matter, however, it does not appear that there was any double enhancement of penalties. The Sentencing Guidelines are not a separate statutory provision of penalties. The Sentencing Guidelines are intended to provide a narrow sentence range within the range authorized by the statute for the offense of conviction. *See* 28 U.S.C. § 994(b)(2) (1988 Supp.) (specifying the sentence range under the Sentencing Guidelines); *Mistretta* [*v. United States* ], [488 U.S. 361] 109 S.Ct. [647,] 656 [102 L.Ed.2d 714 (1989) ]; Commentary, Application Note # 10 to Sentencing Guidelines § 2D1.1 ('The Commission has used the sentences provided in ... the statute (21 U.S.C. § 841(b)(1), as the primary basis for the guideline sentences.').

*Moralez*, 964 F.2d at 682.

Gater's fifth claim, and fourth claim of ineffective assistance of appellate counsel, fails both prongs of the *Strickland* standard. Gater's appellate was not deficient for failing to present his frivolous "double counting" claim on appeal. Gater cannot establish that his appellate counsel was deficient, or that he was prejudiced, by his counsel's effective appellate advocacy on Gater's behalf.

Accordingly, Gater's fifth claim, for impermissible double counting of his convictions for sentencing purposes, is devoid of merit, is refuted by the record and established case law, and is denied.

## CONCLUSION

For the foregoing reasons, this Court denies all of the claims contained in Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Gater has not made a substantial showing of the denial of a federal constitutional right.

Dated this 8th day of August, 2018.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE